No. 22-3057

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| CHRISTINE SIMMONS, as parent and natural guardian of T.S. and individually; and HSINYI LIU, as parent and natural guardian of B.W. and individually; and All Others Similarly Situated,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>J.B. PRITZKER, in his official capacity as Governor of Illinois; OTTAWA TOWNSHIP HIGH SCHOOL #140; PEDRO MARTINEZ, in his official capacity as Chief Executive Officer of Chicago Public Schools; BOARD OF EDUCATION OF THE CITY OF CHICAGO; MIGUEL DEL VALLE, in his official capacity as President of the Board of Education of the City of Chicago; ILLINOIS STATE BOARD OF EDUCATION; CARMEN AYALA, in her official capacity as Superintendent of the Illinois State Board of Education; and MICHAEL CUSHING,<br><br>Defendants-Appellees. | ) Appeal from the United States<br>) District Court for the Northern<br>) District of Illinois, Eastern Division<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 1:22-cv-00123<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) The Honorable<br>) MANISH S. SHAH,<br>) Judge Presiding. |

**BRIEF OF STATE DEFENDANTS-APPELLEES**

**LEIGH J. JAHNIG**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 793-1473 (office)
(773) 590-7877 (cell)
Leigh.Jahnig@ilag.gov

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

Attorneys for State Defendants-Appellees
Governor Pritzker, the Illinois State Board
of Education, and its Superintendent

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................. iii

JURISDICTIONAL STATEMENT .................................................................... 1

ISSUES PRESENTED FOR REVIEW ............................................................. 5

STATEMENT OF THE CASE ........................................................................... 6

SUMMARY OF ARGUMENT ........................................................................ 12

ARGUMENT ..................................................................................................... 13

I.    The district court correctly dismissed plaintiffs' requests for injunctive and declaratory relief as moot. ................................................................................ 13

II.    The district court correctly dismissed the IDEA claim. ................................... 19

    A.    The district court correctly determined that plaintiffs were required to exhaust the IDEA's administrative remedies. .................................. 21

        a.    This case is not exempt from exhaustion as a "systemic" failure. ........................................................................................ 23

        b.    This case is not exempt from exhaustion for lack of notice. ........ 28

        c.    The "stay put" provision does not exempt this case from exhaustion ................................................................................ 30

    B.    Plaintiffs' IDEA claim also fails on the merits. ...................................... 33

        1.    This court can reach the merits without defendants filing a cross-appeal. ................................................................................... 33

        2.    The IDEA claim fails because remote learning is not a change in placement ................................................................................... 34

III.    The district court correctly dismissed the claims under the Rehabilitation Act and the ADA .............................................................................................. 38

    A.    The district court correctly held that plaintiffs had to exhaust IDEA administrative remedies to bring these claims. ...................................... 38

i

B.     Even if plaintiffs were not required to exhaust their ADA and Rehabilitation Act claims, the court should affirm the dismissal of those claims on the merits. ................................................................................. 41

IV.    The district court correctly dismissed the section 1983 claims. ........................ 43

V.    The district court correctly dismissed the RICO claim against State defendants. ................................................................................................... 46

    A.     The Eleventh Amendment bars any requests for relief against State defendants that are not moot. .................................................................. 46

    B.     Plaintiffs did not state a RICO claim against State defendants. ............ 47

          1.     Plaintiffs were not injured in business or property. ..................... 48

          2.     Plaintiffs did not allege that State defendants committed any predicate acts of fraud. ................................................................. 50

          3.     Plaintiffs did not sufficiently allege that the purported misrepresentations caused them harm. ........................................ 51

VI.    The state law claim against State defendants was barred by the Eleventh Amendment. ............................................................................................... 52

CONCLUSION ........................................................................................... 53

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*A.H. by Holzmueller v. Ill. High Sch. Ass'n*,
  881 F.3d 587 (7th Cir. 2018)..........................................................41, 42

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014).................................................................46

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
  683 F.3d 328 (7th Cir. 2012)..........................................................41, 43

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................13, 22, 42

*Aslin v. Fin. Indus. Regul. Auth., Inc.*,
  704 F.3d 475 (7th Cir. 2013)..........................................................13, 18

*Ass'n for Cmty. Living in Colo. v. Romer*,
  992 F.2d 1040 (10th Cir. 1993)............................................................27

*Banks v. ACS Educ.*,
  638 F. App'x 587 (9th Cir. 2016)..........................................................46

*Bills v. Va. Dep't of Educ.*,
  605 F. Supp. 3d 744 (W.D. Va. 2022) ..................................................36

*Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*,
  103 F.3d 545 (7th Cir. 1996)..........................................34, 35, 36, 38

*Bd. of Trustees of Univ. of Ala. v. Garrett*,
  531 U.S. 356 (2001) ............................................................................46

*Bos. Bit Labs, Inc. v. Baker*,
  11 F.4th 3 (1st Cir. 2021)...........................................................15, 18, 19

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009).................................................................13

*Brown v. Bartholomew Consol. Sch. Corp.*,
  442 F.3d 588 (7th Cir. 2006)....................................................13, 21, 40

*Calderone v. City of Chi.*,
  979 F.3d 1156 (7th Cir. 2020)...............................................................21

*Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*,
  400 F.3d 508 (7th Cir. 2005).................................................................17

*Christopher W. v. Portsmouth Sch. Comm.*,
877 F.2d 1089 (1st Cir. 1989) .................................................................. 29, 30, 32

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985) ................................................................................. 44

*Coe v. Cnty. of Cook*,
162 F.3d 491 (7th Cir. 1998)...................................................................... 33

*Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (PS 79) v.*
*N.Y.C. Bd. of Educ.*, 629 F.2d 751 (2d Cir. 1980) ..................................... 35

*Council 31 of AFSCME v. Quinn*,
680 F.3d 875 (7th Cir. 2012).................................................................... 46

*Courtney v. Halleran*,
485 F.3d 942 (7th Cir. 2007)..................................................................... 48

*Covington v. Knox Cnty. Sch. Sys.*,
205 F.3d 912 (6th Cir. 2000)..................................................................... 29

*D.M. v. N.J. Dep't of Educ.*,
No. CIV.A. 14-4620 ES, 2014 WL 4271646 (D.N.J. Aug. 28, 2014) ................... 17

*DeGuellege v. Camilli*,
664 F.3d 192 (7th Cir. 2011)..................................................................... 47

*DL v. D.C.*,
450 F. Supp. 2d 11 (D.D.C. 2006)............................................................... 27

*Doe ex rel. Brockhuis v. Ariz. Dep't of Educ.*,
111 F.3d 678 (9th Cir. 1997).......................................................... 24, 25, 26, 27

*Doe v. Roe*,
958 F.2d 763 (7th Cir. 1992)..................................................................... 49

*Donoho ex rel. Kemp v. Smith Cnty. Bd. of Educ.*,
21 F. App'x 293 (6th Cir. 2001) ................................................................ 30

*Edelman v. Jordan*,
415 U.S. 651 (1974) ............................................................................ 44, 47

*Eden, LLC v. Justice*,
36 F.4th 166 (4th Cir. 2022) ................................................................ 15, 18

*E.F.L. v. Prim*,
986 F.3d 959 (7th Cir. 2021)..................................................................... 13

iv

*El Paso Natural Gas Co. v. Neztsosie,*
    526 U.S. 473 (1999) ....................................................................... 33

*Ellenberg v. N.M. Mil. Inst.,*
    478 F.3d 1262 (10th Cir. 2007).......................................20, 23, 24, 26

*Erickson v. Pardus,*
    551 U.S. 89 (2007) ..................................................................... 6, 13

*Equal Emp. Opportunity Comm'n v. Flambeau, Inc.,*
    846 F.3d 941 (7th Cir. 2017)........................................................ 14, 16

*Ex parte Young,*
    209 U.S. 123 (1908) .......................................................................... 46

*Fry v. Napoleon Cmty. Sch.,*
    580 U.S. 154 (2017) ..................................................................... 19, 39

*Goren v. New Vision Int'l, Inc.,*
    156 F.3d 721 (7th Cir. 1998)............................................................ 50

*H.P. ex rel. W.P. v. Naperville Cmty. Unit Sch. Dist. #203,*
    910 F.3d 957 (7th Cir. 2018)....................................................... 2, 13

*Hacker v. Dart,*
    62 F.4th 1073 (7th Cir. 2023) ......................................................... 41

*Hamer v. Neighborhood Hous. Servs. of Chi.,*
    897 F.3d 835 (7th Cir. 2018)............................................................ 41

*Handberry v. Thompson,*
    446 F.3d 335 (2d Cir. 2006) ........................................................... 27

*Hawse v. Page,*
    7 F.4th 685 (8th Cir. 2021) ...............................................15, 16, 18, 19

*Hemi Grp., LLC v. City of N.Y.,*
    559 U.S. 1 (2010) ....................................................................... 48, 51

*Hoeft v. Tucson Unified Sch. Dist.,*
    967 F.2d 1298 (9th Cir. 1992)...................................................*passim*

*Hollander v. Brown,*
    457 F.3d 688 (7th Cir. 2006).......................................................21, 22

*Honig v. Doe,*
    484 U.S. 305 (1988) ..................................................16, 20, 22, 31

*Illinois ex rel. Ryan v. Brown*,
    227 F.3d 1042 (7th Cir. 2000) ............................................................................. 48

*J.T. v. de Blasio*,
    500 F. Supp. 3d 137 (S.D.N.Y. 2020) ................................................. 36, 37, 48, 51

*Jamie S. v. Milwaukee Pub. Sch.*,
    668 F.3d 481 (7th Cir. 2012) ......................................................................... 24, 29

*Jaros v. Ill. Dep't of Corr.*,
    684 F.3d 667 (7th Cir. 2012) ............................................................................... 2

*John M. v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202*,
    502 F.3d 708 (7th Cir. 2007) ............................................................................. 35

*Jones v. Cummings*,
    998 F.3d 782 (7th Cir. 2021) ......................................................................... 13, 23

*Joseph v. Bd. of Regents of Univ. of Wis. Sys.*,
    432 F.3d 746 (7th Cir. 2005) ............................................................................. 46

*K.T. ex rel. S.W. v. W. Orange Bd. of Educ.*,
    No. 01-CIV-3208 (WGB), 2001 WL 1715787 (D.N.J. Oct. 23, 2001) ................ 17

*Klaassen v. Trustees of Ind. Univ.*,
    7 F.4th 592 (7th Cir. 2021) ............................................................................... 45

*Kowalski v. Boliker*,
    893 F.3d 987 (7th Cir. 2018) ............................................................................... 4

*Lukaszczyk v. Cook Cnty.*,
    47 F.4th 587 (7th Cir. 2022) ..................................................................... 14, 19, 45

*Luna Perez v. Sturgis Pub. Sch.*,
    143 S. Ct. 859 (2023) ....................................................................................... 39

*Martinez v. Newsom*,
    46 F.4th 965 (9th Cir. 2022) ............................................................................. 27

*McHugh v. Ill. Dep't of Transp.*,
    55 F.4th 529 (7th Cir. 2022) ............................................................................... 2

*Mosely v. Bd. of Educ. of City of Chi.*,
    434 F.3d 527 (7th Cir. 2006) ......................................................................... 21, 22

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
    297 F.3d 195 (2d Cir. 2002) ............................................................................. 31

*Murphy v. Smith*,
    844 F.3d 653 (7th Cir. 2016)................................................................ 52

*N.D. v. Haw. Dep't of Educ.*,
    469 F. App'x 570 (9th Cir. 2012))......................................................... 17

*N.D. ex rel. parents acting as guardians ad litem v. Haw. Dep't of Educ.*,
    600 F.3d 1104 (9th Cir. 2010)..............................................31, 32, 36, 38

*N.J. Prot. & Advoc., Inc. v. N.J. Dep't of Educ.*,
    563 F. Supp. 2d 474 (D.N.J. 2008) ...................................................27-28

*Nuñez v. Ind. Dep't of Child Servs.*,
    817 F.3d 1042 (7th Cir. 2016)................................................................. 4

*P.F. by A.F. v. Taylor*,
    914 F.3d 467 (7th Cir. 2019).................................................................. 41

*Patrick G. ex rel. Stephanie G. v. Harrison Sch. Dist. No. 2*,
    40 F.4th 1186 (10th Cir. 2022) ............................................................. 17

*Parent/Pro. Advoc. League v. City of Springfield*,
    934 F.3d 13, 28 (1st Cir. 2019) ...........................................23, 25, 27

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ................................................................................ 52

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979) .............................................................................. 46

*R.B. v. Mastery Charter Sch.*,
    532 F. App'x 136 (3d Cir. 2013).............................................................. 17

*Roberts v. City of Chi.*,
    817 F.3d 561 (7th Cir. 2016).................................................................. 43

*Roe v. Baker*,
    624 F. Supp. 3d 52 (D. Mass. 2022)) .................................................36, 37

*Ryder v. Hyles*,
    27 F.4th 1253 (7th Cir. 2022) ...........................................................48, 49

*St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*,
    919 F.3d 1003 (7th Cir. 2019)................................................................ 45

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
    411 U.S. 1, 37 (1973) ............................................................................ 44

*Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*,
  471 U.S. 359 (1985) ............................................................... 40

*Seminole Tribe of Fla. v. Fla.*,
  517 U.S. 44 (1996) ................................................................ 53

*Simpson-Vlach v. Mich. Dep't of Educ.*,
  No. 22-1724, 2023 WL 3347497 (6th Cir. May 10, 2023) ............................ 15, 17

*S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc.*,
  191 F.3d 842 (7th Cir. 1999).................................................... 3

*Speech First, Inc. v. Killeen*,
  968 F.3d 628 (7th Cir. 2020)................................................... 14

*Srail v. Vill. of Lisle*,
  588 F.3d 940 (7th Cir. 2009)................................................... 45

*Stamatakis Indus., Inc. v. King*,
  965 F.2d 469 (7th Cir. 1992)................................................... 3

*T.R. v. Sch. Dist. of Phila.*,
  4 F.4th 179 (3d Cir. 2021)..................................................... 23, 27

*V.D. v. State*,
  403 F. Supp. 3d 76 (E.D.N.Y. 2019) ............................................ 17, 32

*Ventura de Paulino v. N.Y.C. Dep't of Educ.*,
  959 F.3d 519 (2d Cir. 2020) ................................................... 32

*Wernsing v. Thompson*,
  423 F.3d 732 (7th Cir. 2005)) ................................................. 14, 15, 19

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ............................................................ 44

*Wis. Dep't of Corr. v. Schacht*,
  524 U.S. 381 (1998) ........................................................... 2

**Statutes and Regulations**

18 U.S.C. § 1961 .................................................................. 47

18 U.S.C. § 1964 .................................................................. 47

20 U.S.C. § 1403 .................................................................. 47, 53

20 U.S.C. § 1415(b).............................................................. 19, 28

20 U.S.C. § 1415(d)............................................................... 30

20 U.S.C. § 1415(f) ............................................................................ 19

20 U.S.C. § 1415(i) ........................................................................ 19-20

20 U.S.C. § 1415(j) ..................................................... 16, 17, 20, 31

20 U.S.C. § 1415(l) ................................................................... 38, 44

28 U.S.C. § 1367 ................................................................................ 53

34 C.F.R. § 300.115(b) ..................................................................... 38

105 ILCS 5/14-13.01 .......................................................................... 37

**Rules**

Fed. R. Civ. P. 25(d) ........................................................................... 1

**Other Authorities**

15A Wright & Miller, Fed. Prac. & Proc. § 3904 (3d ed.) ............................................. 33

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants' jurisdictional statement is not complete and correct.  As required by 7th Cir. R. 28(b), State Defendants-Appellees JB Pritzker, in his official capacity as Governor of the State of Illinois, the Illinois State Board of Education ("Board"), and Tony Sanders, in his official capacity as Superintendent of the Illinois State Board of Education (collectively, "State defendants"), provide this statement.[1]

Plaintiffs B.W. and T.S., then students in two Illinois public schools, and their parents, Hsinyi Liu and Christine Simmons, filed a complaint in the district court against the Governor, in his official capacity; the Board; and then-Superintendent of the Board Carmen Ayala, in her official capacity; along with multiple defendants from the City of Chicago and Ottawa Township public school districts.  Plaintiffs alleged causes of action under (1) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (count 1); (2) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (count 2); (3) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (count 3); (4) 42 U.S.C. § 1983, based on purported violations of plaintiffs' rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution (counts 4 and 5); (5) state law implementing the IDEA, *see* 105 ILCS 5/14-8.02a; 23 Ill. Admin. Code § 226.710 (count 6); and (6) the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

---

[1]  Tony Sanders should be substituted as a Defendant-Appellee for Ayala, because he is now the Superintendent of the Illinois State Board of Education.  *See* Fed. R. Civ. P. 25(d).

18 U.S.C. § 1961 *et seq.* (count 7).  Doc. 1.[2]  Plaintiffs sought (1) declaratory and injunctive relief, (2) compensatory education to make up for any "regressions and/or loss of competencies," (3) appointment of a "RICO Special Monitor" to oversee the disbursement of IDEA funds, and (4) nominal and punitive damages.  *Id.* at 47-50.

To the extent that the Eleventh Amendment to the United States Constitution affects subject matter jurisdiction, the district court lacked subject matter jurisdiction over plaintiffs' claims for retrospective relief under section 1983 and RICO (counts 4, 5, and 7), as well as plaintiffs' state law claim (count 6).  *See infra* pp. 44, 46-47, 52-53;  *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 532-34 (7th Cir. 2022) (Eleventh Amendment immunity is jurisdictional but can be waived); *see also Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (United States Supreme Court has "not decided" whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction").[3]  The district court further lacked subject matter jurisdiction over all of plaintiffs' requests for injunctive and declaratory relief, because those requests became moot.  *See infra* pp. 13-19; *H.P. ex rel. W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (mootness is jurisdictional).  Otherwise, the district court had subject matter jurisdiction over plaintiffs' action under 28 U.S.C. § 1331 because it raised federal questions, and it had supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

---

[2]  The district court docket, which is the record on appeal, is cited as "Doc. __." Plaintiffs-Appellants' opening brief is cited as "AT Br. __."

[3]  This court has not resolved whether the Eleventh Amendment would also bar retrospective relief under the ADA.  *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-72 & n.5 (7th Cir. 2012).

On October 12, 2022, the district court granted defendants' motions to dismiss this action under Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6). Doc. 50. It ruled that it lacked jurisdiction over plaintiffs' requests for injunctive relief, which had become moot, *id.* at 5-7, and dismissed the IDEA, Rehabilitation Act, ADA, and section 1983 claims (counts 1 through 5) without prejudice because plaintiffs did not exhaust their administrative remedies, *id.* at 9-11, 14. The district court then dismissed the RICO claim (count 7) with prejudice for failure to state a claim. *Id.* at 11-13. Finally, the district court relinquished supplemental jurisdiction over the state law claim (count 6) and dismissed that claim without prejudice. *Id.* at 14. Thus, the district court disposed of all claims against all parties. The same day, a separate judgment order was entered on the district court docket pursuant to Fed. R. Civ. P. 58. Doc. 51. No motion to alter or amend the judgment was filed.

Although the district court dismissed some of plaintiffs' claims without prejudice, that did not undermine the judgment's finality. Although the requests for injunctive relief were dismissed without prejudice as moot, a party may appeal adverse dismissals for lack of jurisdiction. *See S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc.*, 191 F.3d 842, 844 (7th Cir. 1999). Similarly, the dismissal without prejudice of a state law claim when the district court relinquishes supplemental jurisdiction does not render the judgment non-final. *See Stamatakis Indus., Inc. v. King*, 965 F.2d 469, 470 (7th Cir. 1992) (reaching appeal of federal claims after district court relinquished supplemental jurisdiction and dismissed state claims without prejudice).

3

And the fact that counts 1 through 5 were dismissed without prejudice for failure to exhaust administrative remedies also does not deprive this court of jurisdiction. The district court's direction to "[e]nter judgment and terminate civil case," Doc. 50 at 14, reflects that it was finished with the case, *see Kowalski v. Boliker*, 893 F.3d 987, 994 (7th Cir. 2018) (dismissal without prejudice was final because district court "entered judgment in favor of the defendants, signaling that it had finished with [the] case"); *Nuñez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016) (similar).

Plaintiffs filed a notice of appeal on November 10, 2022, Doc. 52, which was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because it was filed within 30 days of the judgment's entry. This court has jurisdiction over plaintiffs' appeal from a final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court correctly dismissed the requests for injunctive and declaratory relief as moot because the remote learning policies during the pandemic have now concluded.

2. Whether the district court correctly dismissed the IDEA, Rehabilitation Act, ADA, and section 1983 claims because (a) plaintiffs did not exhaust administrative remedies, nor were they exempted from doing so, or, in the alternative, (b) those allegations did not state a claim.

3. Whether the district court correctly dismissed the RICO claim against State defendants because (1) it was barred by the Eleventh Amendment, and (2) plaintiffs did not allege an injury under RICO, describe the alleged fraud with particularity, or establish causation.

4. Whether the Eleventh Amendment barred the state law claim against State defendants.

## STATEMENT OF THE CASE

Plaintiffs alleged the following facts in the complaint, which are taken as true for purposes of a motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

**The Governor's Covid-19 executive orders regarding remote learning**

On March 11, 2020, the World Health Organization declared that the outbreak of the novel coronavirus known as Covid-19 was a pandemic. Doc. 1-5. To address this severe public health risk, Governor Pritzker issued a serious of executive orders aimed at mitigating the spread of this disease. *E.g., id.* Two days after the pandemic was declared, the Governor ordered that all public and private schools in Illinois close for several weeks. *Id.* That executive order also permitted school districts to adopt e-learning programs, but mandated that such programs "must ensure that the specific needs of students are met, including special education students." *Id.* Two weeks later, the Board directed school districts to implement remote learning "for the duration of the suspension of in-person instruction." Doc. 1-7 at 2.

As the pandemic continued, the State developed a plan for reopening the various institutions that were closed or operating remotely. *See* Doc. 1-8. On June 4, 2020, the Governor issued an executive order allowing schools to provide in-person educational services following the completion of the 2019-2020 school year. *Id.* The Board then issued guidance for local school districts, noting (among other things) that remote learning programs "must address the unique needs of students eligible for special education services," and that providing special education students with

some in-person services was a "high priority." Doc. 1-9 at 17, 26. The guidance emphasized that school districts would make the forward-looking decisions about implementing in-person, remote, and hybrid learning based on local needs. *See generally* Doc. 1-9.

**B.W.**

Plaintiff B.W., who was 15 years old in March 2020, was a student in the Chicago Public Schools. Doc. 1 at 5. He had been diagnosed with Down Syndrome and cognitive delays and been issued an individualized education program ("IEP") in accordance with federal law. *Id.* at 5, 13-14; Doc. 1-1. Under his IEP, B.W. was entitled to "a significantly modified curriculum with programmatic paraprofessional supports." Doc. 1-1 at 1.

When schools were closed for in-person learning, B.W. "received at-home instruction" from March 16 until sometime in April 2020. Doc. 1 at 14. Then, B.W. began attending classes in a hybrid setting, consistent with his parents' shared custody agreement. *Id.* For one week (while in his father's custody), B.W. would attend classes remotely; for the next week (while in his mother's custody), B.W. would spend half the day with in-person instruction, and the other half with remote instruction. *Id.* This hybrid arrangement continued through June 2020. *Id.* Although plaintiffs asserted that B.W. was deprived of "in-person services" during both the 2019-2020 and the 2020-2021 school years, *id.* at 15, the complaint alleged no facts about B.W.'s educational setting — whether it was in-person, remote, or hybrid — after June 2020, or during the 2020-2021 school year.

**T.S.**

Plaintiff T.S. was a 16-year-old public high school student in Ottawa, Illinois in March 2020.  Doc. 1 at 15.  T.S. had been diagnosed with learning disabilities and also had an IEP requiring certain educational services.  *Id.*  Specifically, T.S.'s IEP provided extra time to take tests, reading comprehension support, and transition services to help prepare for life after high school.  *Id.*; Doc. 1-2 at 14, 17.

T.S. began attending school remotely at the start of the pandemic, and then concluded the 2019-2020 school year in a remote learning environment.  Doc. 1 at 16. When the 2020-2021 school year began, T.S. attended school on a hybrid model, consisting of approximately half in-person and half remote.  *Id.*

**The complaint**

On January 8, 2022 — months after the conclusion of the 2020-2021 school year, and nearly two years into the pandemic — plaintiffs filed this action.  B.W.'s parent Hsinyi Liu and T.S.'s parent Christine Simmons alleged claims on behalf of themselves and their children against State defendants, along with defendants from the City of Chicago school district ("Chicago defendants") and the Ottawa school district ("Ottawa defendants").  Doc. 1.  Plaintiffs contended that the use of remote instruction during the pandemic had deprived B.W. and T.S. — as well as a putative class of other disabled students in Illinois — of educational services.  *See generally id.* The complaint, however, did not identify any specific services that B.W. or T.S. failed to receive.  For example, plaintiffs did not allege that T.S. was deprived of extended time to take tests.  *See id.* at 13-17.  Rather, plaintiffs claimed that virtual instruction

by itself "altered [the students'] IEP[s]" and "changed [their] educational placement," violating the students' statutory rights under the IDEA to a free appropriate public education (count 1). *See id.* at 14-16, 23-26. And, plaintiffs asserted, this alleged IDEA violation as to both students continued into January 2022, during a week-long Chicago Teachers Union strike based on a spike in Covid-19 cases, though T.S. did not attend school in Chicago. *See id.* at 12, 25-26.

Plaintiffs also asserted claims under the Rehabilitation Act (count 2) and the ADA (count 3), alleging that the use of remote learning discriminated against them on the basis of their disabilities. *Id.* at 26-30. Plaintiffs brought counts 4 and 5 under section 1983, contending that the use of remote learning violated their equal protection and substantive due process rights. *Id.* at 31-33. Count 6 raised a claim under one of the state laws implementing the federal IDEA. *Id.* at 33-34. And count 7 alleged that defendants engaged in a racketeering enterprise to deprive plaintiffs, "the beneficiaries of IDEA Part B," of the funds allocated by the federal government for the education of disabled students. *Id.* at 34-47.[4]

In their complaint, plaintiffs acknowledged that they had not exhausted the administrative remedies created by the IDEA, but asserted that they "fall within the exceptions" to the IDEA's exhaustion requirement. *Id.* at 4, 15, 17. As relief, they sought a declaratory judgment that defendants had violated the IDEA, including a declaration that their current educational placements, as reflected in their IEPs,

---

[4] Plaintiffs asserted the RICO claim against the "Individual Defendants," and the Superintendent, in her official capacity, was the only State defendant they included in that group. Doc. 1 at 2, 34.

required "in-person instruction and services." *Id.* at 47-48.  They also sought an injunction to prevent further violations of the IDEA, "compensatory education" payments to address learning losses, and a "RICO Special Monitor" to oversee the disbursement of IDEA funds allocated by the federal government.  *Id.* at 48-49; *see also* Doc. 39 at 3.

Defendants moved to dismiss under Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6).  They argued that the requests for injunctive relief were moot, because schools had returned to in-person learning, Doc. 29 at 4-7, and that counts 1 through 5 should be dismissed because plaintiffs did not exhaust administrative remedies, *id.* at 12-13; Doc. 30 at 16-26, 29; Doc. 31 at 11-13.  In particular, defendants explained how this case was not excepted from the statutory exhaustion requirement.  Doc. 30 at 19-26; Doc. 31 at 11-13.  And in the alternative, those claims all failed on the merits because:  (1) remote learning did not change the students' educational placement, so there was no IDEA violation, (2) plaintiffs did not allege discrimination on the basis of disability, and (3) there was no equal protection or substantive due process violation because remote learning was a rational policy in the face of a global pandemic.  Doc. 29 at 7-9; Doc. 30 at 21-31; Doc. 31 at 13-22.  State defendants further argued that the Eleventh Amendment barred the state law claim in count 6 against them.  Doc. 29 at 13-14.  Finally, defendants pointed to a host of flaws in the RICO claim, including that it was barred against the State defendants, did not allege an economic injury, did not describe the purported fraud with particularity, and did not sufficiently allege causation.  *Id.* at 9-12; Doc. 30 at 31-34; Doc. 31 at 25-29.

The district court granted defendants' motions. Doc. 50. It first agreed that the claims for injunctive relief were moot. *Id.* at 5-7. It then determined that plaintiffs were required to exhaust administrative remedies, and that their failure to do so required dismissal of counts 1 through 5 (the IDEA, Rehabilitation Act, ADA, and section 1983 claims). *Id.* at 9-11. The court noted that the RICO claim would be barred against the State defendants, but in any event, it dismissed that claim for failure to state a claim against all defendants. *Id.* at 8-9, 11-13. Finally, it dismissed the state law claim against State defendants based on the Eleventh Amendment and declined to exercise supplemental jurisdiction over that claim with respect to the Chicago and Ottawa defendants. *Id.* at 8, 14.

Plaintiffs appealed. Doc. 52.

## SUMMARY OF ARGUMENT

As an initial matter, the district court correctly dismissed plaintiffs' requests for injunctive relief as moot because defendants' remote learning policies have long concluded, and there is no reasonable risk they will recur.  Next, plaintiffs' claims relating to the supposed denial of a free appropriate public education — the claims under the IDEA, Rehabilitation Act, ADA, and section 1983 — suffer from a host of defects.  Plaintiffs admitted that they did not exhaust administrative remedies before bringing these claims, and the exceptions to the exhaustion requirement on which they rely are not recognized in this circuit.  Even if those exceptions were legally valid, they would not apply here.  Plaintiffs cannot show that the administrative process would afford them no relief, and their contrary position would effectively nullify Congress's statutory exhaustion requirement.  More broadly, plaintiffs' IDEA claim is driven entirely by their insistence that remote learning changed students' educational placement and altered their IEPs, but that assertion is incorrect.  The substance of their Rehabilitation Act, ADA, and section 1983 claims is similarly flawed:  implementing remote learning at the outset of a global pandemic was non-discriminatory and rational.

Plaintiffs' RICO claim fares no better.  Even if this claim could get past the Eleventh Amendment hurdle, it would still fail because plaintiffs did not allege an economic injury, fraud, or causation.  The Eleventh Amendment similarly bars the state law claim.

## ARGUMENT

The court reviews *de novo* a dismissal for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), *E.F.L. v. Prim*, 986 F.3d 959, 962 (7th Cir. 2021), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6), *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009).  On *de novo* review, the court may affirm the dismissal on any ground supported by the record and law.  *Jones v. Cummings*, 998 F.3d 782, 785 (7th Cir. 2021).

A complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6) when it does not contain "sufficient factual matter, accepted as true," to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court takes the well-pleaded allegations and reasonable inferences therefrom in the complaint as true.  *Erickson*, 551 U.S. at 93-94.  But the court need not accept "abstract recitations of the elements of a cause of action or conclusory legal statements."  *Brooks*, 578 F.3d at 581.

## I. The district court correctly dismissed plaintiffs' requests for injunctive and declaratory relief as moot.

"Mootness is a jurisdictional defect that may arise at any time."  *H.P.*, 910 F.3d at 960.  In the context of a request for injunctive relief, "once the threat of the act sought to be enjoined dissipates, the suit must be dismissed as moot."  *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006).  A request for declaratory relief also becomes moot when it asks the court to "declare rights and obligations about a controversy that no longer exists."  *Aslin v. Fin. Indus. Regul. Auth., Inc.*, 704 F.3d 475, 478 (7th Cir. 2013).

Here, plaintiffs acknowledge that the Governor issued an executive order allowing schools to reopen for in-person learning in June 2020, and that plaintiffs returned to school in person. Doc. 1 at 10; Doc. 1-8; *see* AT Br. 10.[5] Thus, plaintiffs' requests for injunctive and declaratory relief are moot because they seek to enjoin, and declare invalid, a policy that no longer exists. *See Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 597 (7th Cir. 2022).

Plaintiffs offer two arguments why their claims for injunctive and declaratory relief are not moot, but neither is persuasive. First, they argue that their requests for prospective relief are covered by the "voluntary cessation" doctrine. AT Br. 10-13, 16-17. A defendant's "voluntary cessation" of allegedly unlawful conduct does not necessarily moot a case or claim, *Wernsing v. Thompson*, 423 F.3d 732, 744 (7th Cir. 2005), because the defendant would then be able to "'engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends,'" *Equal Emp. Opportunity Comm'n v. Flambeau, Inc.*, 846 F.3d 941, 949 (7th Cir. 2017) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). The key inquiry is whether the conduct is reasonably likely to recur. *See Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020). In this context, the "'complete repeal'" of a government policy renders a case moot unless there is a "'reasonable expectation'" that the government will reenact the policy. *Id.*

---

[5] Though both plaintiffs appear to now be over the age of 18, Doc. 1 at 13-15, the record is silent as to whether either or both of them has graduated from high school.

Here, there is no reasonable expectation that remote learning will recur because the dangers posed by the pandemic have been significantly mitigated thanks to vaccines and other measures. Numerous courts, in fact, have recognized that the substantial changes in public health conditions in the last few years render a return to the "unprecedented closures that began in March 2020" significantly unlikely. *Simpson-Vlach v. Mich. Dep't of Educ.*, No. 22-1724, 2023 WL 3347497, *8 (6th Cir. May 10, 2023) (similar request for prospective relief was moot); *see Eden, LLC v. Justice*, 36 F.4th 166, 171 (4th Cir. 2022); *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 11 (1st Cir. 2021); *Hawse v. Page*, 7 F.4th 685, 693 (8th Cir. 2021).

Plaintiffs' reliance on an April 2022 press release recommending that schools (among other institutions) "consider their current testing capacity" and "take all preparations necessary" is misplaced. AT Br. 10. Such general recommendations do not show that "the schools are at risk of being closed again." *See id.* The risk that public health conditions could deteriorate to March 2020 levels and necessitate a return to remote learning is merely a "theoretical possibility," which does not forestall mootness. *Wernsing*, 423 F.3d at 745.[6]

Plaintiffs also complain that defendants have not provided "assurances" that they will not reinstate remote learning, which, they argue, contrasts with instances where a defendant "self-corrected." AT Br. 11-13. But assurances or not, the unique

---

[6] Although plaintiffs suggested below that schools were closed for in-person learning as late as January 2022, Doc. 1 at 12-13, that one-week closure occurred in Chicago Public Schools because the Chicago Teachers Union voted not to conduct classes in person, *see id.* at 12; Doc. 30 at 4, 13, and plaintiffs do not argue on appeal that the closure demonstrates a likelihood of remote learning in the future.

15

circumstances that led to remote learning are unlikely to recur for the reasons explained. *Hawse*, 7 F.4th at 692. Plaintiffs, moreover, cite no case law requiring a defendant to promise not to renew a policy to show that such a renewal is unlikely. Indeed, when a defendant ends a challenged policy for "reasons unrelated to [a] lawsuit," that is "important evidence that the conduct is unlikely to reoccur." *Flambeau*, 846 F.3d at 949 (claim to enjoin medical examination policy was moot when policy was discontinued). Plaintiffs' argument actually underscores why voluntary cessation does not overcome mootness here: defendants did not eliminate remote learning to avoid a lawsuit, but because external conditions, that is, improvement in public health conditions during an unprecedented pandemic, rendered remote learning unnecessary.

Second, plaintiffs argue that their request for a declaration that the students' "pendency placement is in-person instruction" overcomes mootness. AT Br. 13-15. They rely on § 1415(j) of the IDEA, also known as the "stay-put" provision, which provides that, when IDEA administrative proceedings are commenced, a student is to "remain in the then-current educational placement." 20 U.S.C. § 1415(j); *see Honig v. Doe*, 484 U.S. 305, 312 (1988) (discussing previous numbering of statute). This provision ensures that schools cannot unilaterally remove a student from an educational program, even if administrative proceedings become protracted. *See Honig*, 484 U.S. at 323-25. Courts have sometimes described the provision as an "automatic" injunction that takes effect whenever IDEA administrative proceedings

commence. *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005).

Plaintiffs misstate the nature of the stay-put provision. That provision is triggered only when there is an ongoing dispute — *i.e.*, "during the pendency of any proceedings" — about a student's IEP or educational placement. 20 U.S.C. § 1415(j). It does not provide standalone relief where, as here, any alleged change in placement has now concluded. Even assuming that remote learning altered the students' "then-current educational placement," (which, as discussed *infra* pp. 34-38, it did not), that purported "change in placement" is no longer occurring. When a purported change in placement ceases, a claim for "stay put" declaratory or injunctive relief becomes moot. *E.g., Patrick G. ex rel. Stephanie G. v. Harrison Sch. Dist. No. 2*, 40 F.4th 1186, 1213-14 (10th Cir. 2022); *N.D. v. Haw. Dep't of Educ.*, 469 F. App'x 570, 572 (9th Cir. 2012); *see Simpson-Vlach*, 2023 WL 3347497, at *1, *5.

Plaintiffs cite cases in which federal courts enforced the stay-put provision in the face of ongoing disputes about students' proper educational placements. AT Br. 13-14. But in each case, the school's ongoing or threatened change presented a live controversy regarding the student's current placement. *See R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 141 (3d Cir. 2013); *D.M. v. N.J. Dep't of Educ.*, No. CIV.A. 14-4620 ES, 2014 WL 4271646, *6 (D.N.J. Aug. 28, 2014); *K.T. ex rel. S.W. v. W. Orange Bd. of Educ.*, No. 01-CIV-3208 (WGB), 2001 WL 1715787, *4 (D.N.J. Oct. 23, 2001); *cf. V.D. v. State*, 403 F. Supp. 3d 76, 94 (E.D.N.Y. 2019) (stay put provision did not

apply).  None of these cases suggest that the "stay-put" provision creates an exception to mootness.

In effect, plaintiffs seek to bypass mootness by reframing their request for relief as for a "declaration" about "pendency placement" instead of an injunction. But a request to "declare rights and obligations about a controversy that no longer exists" does not forestall mootness. *Aslin*, 704 F.3d at 478.  Plaintiffs' attempt to distinguish *Eden*, 36 F.4th at 171, on which the district court relied, Doc. 50 at 7, thus fails.  In *Eden*, the court held that the plaintiffs' challenge to state executive orders imposing Covid-19 mitigation measures became moot when, like here, the orders were rescinded.  36 F.4th at 168-70.  Plaintiffs argue that their request for stay-put declaration distinguishes this case from *Eden*.  AT Br. 17.  But they acknowledge that they seek declaratory relief to establish their educational placement "now and in the future," *id.*, demonstrating that their request for declaratory relief is prospective, and therefore moot.

Their attempts to distinguish the other cases on which the district court relied are equally unsuccessful.  The court pointed to *Bos. Bit Labs*, 11 F.4th at 11-12, and *Hawse*, 7 F.4th at 693, both of which held that challenges to Covid-19 mitigation policies became moot when the orders were superseded after public health conditions had substantially improved.  Plaintiffs argue that those cases are distinct because there were additional reasons, beyond public health conditions, why those policies would not be reenacted.  *See* AT Br. 15-17.  Plaintiffs overstate these distinctions — in both cases, the court highlighted the "substantial changes in public health

18

conditions" as the predominant reason the litigation challenging those policies was moot. *Hawse*, 7 F.4th at 693; *see Bos. Bit Labs*, 11 F.4th at 10. As stated, a return to remote learning remains a mere "theoretical possibility" in light of the public health improvements since March 2020. *See Wernsing*, 423 F.3d at 745. Indeed, this court has already held that the Governor's revocation of a Covid-19 executive order renders a challenge to that order moot, *Lukaszczyk*, 47 F.4th at 597, and it should do so again here.

## II.     The district court correctly dismissed the IDEA claim.

The IDEA provides States with federal funds in exchange for the States' commitment to provide disabled children with a "free appropriate public education," or "FAPE." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 158 (2017). The "primary vehicle" for doing so is through an "individualized education program," or "IEP." *Id.* Each student's IEP is crafted by the student's "IEP Team," which consists of parents, teachers, and school officials, and each IEP "spells out a personalized plan to meet all of the child's educational needs." *Id.* (cleaned up).

The IDEA also establishes "formal procedures for resolving disputes," which begins with filing a complaint with the local or state educational authority, which in turn triggers a preliminary meeting, and can progress to a "due process hearing" before "an impartial hearing officer." *Id.* at 159; *see* 20 U.S.C. §§ 1415(b), (f). "[A] parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court." *Fry*, 580 U.S. at 159; 20

U.S.C. § 1415(i)(2)(A).  While these proceedings are ongoing, the IDEA requires that the student "remain in the then-current educational placement."  20 U.S.C. § 1415(j).

The requirement that parents exhaust these administrative remedies before filing suit "recognizes the traditionally strong state and local interest in education," *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992), and reflects "Congress' clear intention to allow those with experience in educating the nation's disabled children at least the first crack at formulating a plan to overcome the consequences of educational shortfalls," *Ellenberg v. N.M. Mil. Inst.*, 478 F.3d 1262, 1275 (10th Cir. 2007) (cleaned up).  The exhaustion requirement thus serves many purposes:  "allow[ing] for the exercise of discretion and educational expertise by state and local agencies, afford[ing] full exploration of technical educational issues, further[ing] development of a complete factual record, and promot[ing] judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children."  *Hoeft*, 967 F.2d at 1303; *see Ellenberg*, 478 F.3d at 1276.  Nevertheless, the Supreme Court has contemplated that IDEA plaintiffs may "may bypass the administrative process where exhaustion would be futile or inadequate."  *Honig*, 484 U.S. at 327.

Here, plaintiffs' IDEA claim was correctly dismissed for failure to exhaust these administrative remedies.  And even if plaintiffs had established that they were exempt from that requirement — which they did not — their IDEA claim also fails on the merits.

**A.** **The district court correctly determined that plaintiffs were required to exhaust the IDEA's administrative remedies.**

Though plaintiffs alleged that they had begun the administrative process, they admitted in their complaint that they did not exhaust administrative remedies. Doc. 1 at 4, 15, 17. The district court correctly dismissed the IDEA claim on that basis. Doc. 50 at 9-11. Plaintiffs offer three arguments why this decision was incorrect, asserting that (1) the district court erred in reaching this issue because exhaustion is an affirmative defense, (2) the district court applied the wrong legal standard for a motion to dismiss, and (3) this case is exempted from the statutory exhaustion requirement. Plaintiffs are wrong on all fronts.

First, plaintiffs did not argue in the district court that exhaustion was an improper basis for a motion to dismiss, and that argument is accordingly forfeited. *Calderone v. City of Chi.*, 979 F.3d 1156, 1163 (7th Cir. 2020). Even if it were not, the district court was permitted to dismiss the case on exhaustion grounds because plaintiffs admitted in their complaint that they did not exhaust administrative remedies. Affirmative defenses are typically not considered until after defendants file an answer. *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006). But, as plaintiffs acknowledge, AT Br. 19, courts can reach such issues in a motion under Fed. R. Civ. P. 12(b)(6) when "the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006); *see Mosely*, 434 F.3d at 533. That is what happened here: plaintiffs admitted in their complaint that they had not exhausted administrative remedies. Doc. 1 at 4, 15, 17.

21

Plaintiffs contend, however, that they asserted in their complaint that they were exempted from the exhaustion requirement, and that the district court should have credited those allegations at the motion to dismiss stage.  AT Br. 19.  But those assertions were legal conclusions, not factual allegations.  District courts may dismiss complaints for lack of exhaustion when the complaint alleges "*facts* that are sufficient to establish the defense."  *Hollander*, 457 F.3d at 691 n.1 (emphasis added).  Legal arguments about when exhaustion is not required are not facts, and the district court was not required to uncritically accept them.  *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Second, plaintiffs argue that the district court incorrectly put the burden on them to negate exhaustion, when it was defendants' burden to establish this affirmative defense.  AT Br. 19.  But, again, it was plaintiffs who put exhaustion at issue, because "the face of [the] complaint . . . compels a conclusion that [they] failed to exhaust."  *Mosely*, 434 F.3d at 533.  Plaintiffs are also incorrect that defendants had to disprove plaintiffs' claimed exhaustion exceptions with "record evidence," AT Br. 19, because plaintiffs admitted in their complaint that they did not exhaust administrative remedies, *see Mosely*, 434 F.3d at 533.  Though plaintiffs were entitled to argue that they were excepted from the exhaustion requirement, the party seeking an exception has the burden to establish it applies.  *See Honig*, 484 U.S. at 327.

Plaintiffs also take issue with the district court's remark that they did not provide "evidence" showing that any exhaustion exceptions applied.  AT Br. 20.  This

does not indicate that the district court applied the wrong legal standard, but rather reflects its recognition that, once plaintiffs admitted they had not exhausted, it was their burden, not defendants', to allege facts that would establish that an exception applied. *See* Doc. 50 at 11. Indeed, the rest of the district court's order shows that it applied the correct legal standard for a motion to dismiss. *See id.* at 1-2, 12-13.

Finally, and in any event, this court can affirm for any reason supported by the record. *See Jones*, 998 F.3d at 785. As now explained, the factual allegations in the complaint, taken as true, refute plaintiffs' arguments that this case falls within three exceptions to the IDEA's exhaustion requirement: (1) an exception for "systemic failures," (2) an exception because they lacked "full notice of their procedural rights," and (3) an exception for the "stay put" provision in 20 U.S.C. § 1415(j). AT Br. 20-24.

### 1.    This case is not exempt from exhaustion as a "systemic" failure.

Some circuits have adopted an exception to IDEA exhaustion for claims that challenge systemic problems, that is, "policies that threaten basic IDEA goals," such as "policies that concern the administrative dispute-resolution mechanism itself." *T.R. v. Sch. Dist. of Phila.*, 4 F.4th 179, 193 (3d Cir. 2021); *see Ellenberg*, 478 F.3d at 1277; *Hoeft*, 967 F.2d at 1309; *but see Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 28 (1st Cir. 2019) (declining to decide whether to recognize systemic exception). But those circuits have been careful to explain that "the systemic exception is not met every time a plaintiff challenges centralized, uniform policies that affect all students within a school or school district." *T.R.*, 4 F.4th at 192. Expanding the systemic label in that manner risks making "the requirement to

23

exhaust essentially meaningless." *Doe ex rel. Brockhuis v. Ariz. Dep't of Educ.*, 111 F.3d 678, 683 (9th Cir. 1997). Instead, "a claim is 'systemic' if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but [ ] it is not 'systemic' if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Id.* at 682. Plaintiffs seeking to apply the "systemic failure" exception must show that "the underlying purposes of exhaustion would not be served by requiring procedural compliance." *Ellenberg*, 478 F.3d at 1277.

This court, moreover, has not recognized the "systemic failure" exception, and indeed, has described the exception as "rather arbitrary": "While some IDEA violations may implicate the structure of a school district's special-education program and may not be remediable through ordinary administrative review, it does not necessarily follow that administrative review is futile or inadequate for *all* violations that are alleged to be 'systemic.'" *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 494 n.3 (7th Cir. 2012) (emphasis in original). For that reason, because the futility exception sufficiently encompasses instances when administrative relief is unavailable, this court should not adopt the "systemic failure" exception here. In any event, this case does not present an occasion to consider whether to do so, because the alleged IDEA violations here are not systemic, nor would exhaustion be futile.

First, although the Governor's executive orders implementing remote learning was a single policy, it affected students throughout the State differently, as the two plaintiffs in this case illustrate. B.W. and T.S. were entitled to significantly different services under their respective IEPs, which remote learning necessarily impacted in different ways: B.W.'s IEP mandated time with paraprofessionals and occupational therapy, while T.S. was entitled to extended time on tests and transition services. Docs. 1-1, 1-2. B.W. and T.S. also experienced different balances of in-person and remote learning, and they returned to a fully in-person environment at different times. *See* Doc. 1 at 14, 16.

A claim challenging a single policy with such disparate effects does not allege a "systemic" failure: "A finding that one student with a certain type and degree of mental health disability" might be entitled to certain relief "would not mean that another student with a different type, or even just a different degree, of mental health disability should have received the same services." *Parent/Pro. Advoc. League*, 934 F.3d at 27; *see Doe*, 111 F.3d at 683 (allegation that plaintiff received no special education services while in jail was not systemic because it presented "a number of factual issues . . . to determine whether the education at the Jail meets the individual needs of each disabled youth incarcerated there"). Indeed, assessing how a policy affects different students, and how to remedy any purported problems is "precisely the kind of dispute to which the IDEA's administrative scheme is addressed." *Hoeft*, 967 F.2d at 1305-06. Plaintiffs, in fact, implicitly acknowledge these nonuniform effects by seeking a special master to determine regressions, loss of competencies,

and compensatory education for individual students.  Doc. 1 at 19-20, 48.  Bypassing

exhaustion here would thus thwart the very purposes of the exhaustion requirement.

*See Ellenberg*, 478 F.3d at 1277-78.

Moreover, to the extent plaintiffs argue that the supposed systemic problems

rendered administrative exhaustion futile, this too is wrong.  Remote learning did not

"implicate[ ] the integrity or reliability of the IDEA dispute resolution procedures."

*Doe*, 111 F.3d at 682.  Nor do plaintiffs allege "practical or legal defects in the IDEA

hearing process."  *Id.* at 683.  They could not:  when B.W. initiated the IDEA's

administrative process — two years after remote learning was implemented — he

received relief through mediation.  *See* Chicago Defs. Br. at 19-22.  If either student

was deprived of their IEP-required services — for example, if T.S. did not receive his

extended test-taking time — a hearing officer could easily have ordered that relief.

The availability of these types of remedies are the very reason the administrative

process exists.  *See Hoeft*, 967 F.2d at 1305-06.  Plaintiffs' ability to receive the relief

they seek through the administrative process shows that exhaustion was required

here.

Plaintiffs offer three unpersuasive contentions in support of their "systemic

failure" argument.  They contend that the alleged IDEA violation they claim is

"systemic" because they sought to bring this action "on behalf of a large class."  AT

Br. 21.  But characterizing every putative class action complaint as challenging a

"systemic" failure would render the statutory exhaustion requirement

"meaningless," because plaintiffs could "bypass[ ]" exhaustion in every instance

"merely by styling the challenge [as] a class action for injunctive relief." *Hoeft*, 967 F.2d at 1308-09. For this reason, courts that have recognized the systemic exception have long held that "the fact that a complaint 'is structured as a class action seeking injunctive relief, without more, does not excuse exhaustion.'" *T.R.*, 4 F.4th at 192 (quoting *Hoeft*, 967 F.2d at 1308); *accord Martinez v. Newsom*, 46 F.4th 965, 974 (9th Cir. 2022); *see Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993) ("This is not the kind of systemic violation that renders the exhaustion requirement inadequate or futile, and framing a complaint as a class action challenge to a general policy does not convert it into one.").

Plaintiffs next contend that they bring a "systemic" challenge because their claims "are not based on particular students' individual needs." AT Br. 21. But as explained, a challenge to a uniform policy is not inherently "systemic," such that it is divorced from individual student needs and outcomes, *see Parent/Pro. Advoc. League*, 934 F.3d at 27-28; *Doe*, 111 F.3d at 683; *Hoeft*, 967 F.2d at 1305-06, and plaintiffs' assertion to the contrary ignores the effects of remote learning — or lack thereof — on the students themselves.

Finally, plaintiffs' cited authority contrasts with the allegations here. While plaintiffs cite a host of cases from other courts that contemplate a "systemic" failure as one way to bypass exhaustion, only three of them actually excused exhaustion on that basis. These cases all involved challenges to policies that deprived disabled students of any services whatsoever. *See Handberry v. Thompson*, 446 F.3d 335, 339, 344 (2d Cir. 2006); *DL v. D.C.*, 450 F. Supp. 2d 11, 13 (D.D.C. 2006); *N.J. Prot. &*

*Advoc., Inc. v. N.J. Dep't of Educ.*, 563 F. Supp. 2d 474, 486 (D.N.J. 2008). This kind of wholesale refusal to provide any services to disabled students affects all disabled students equally and is a far cry from the allegations here, where remote learning, at best, may alter the format of some services provided and where its effects will vary by student. Neither B.W. nor T.S. were wholly deprived of services; to the contrary, both students have detailed IEPs, which were developed in consultation with their parents. Docs. 1-1, 1-2. And the complaint contains no allegations that either B.W. or T.S. was deprived of any specific services required by their IEPs. *See* Doc. 1 at 13-17.

### 2.     This case is not exempt from exhaustion for lack of notice.

The second exhaustion exception that plaintiffs assert argues that they were not "given full notice of their procedural rights." AT Br. 22-23. The IDEA requires a school district to give notice to parents when it "proposes" to "change" the student's "educational placement." 20 U.S.C. § 1415(b)(3). Plaintiffs argue that remote learning violated this notice provision by "unilaterally" changing their educational placements. Initially, plaintiffs are wrong that remote learning constitutes a change in educational placement that would require such notice, *infra* pp. 34-38, and the court can reject this argument on this basis alone.

Even looking past that defect, any lack of notice before commencing remote learning does not excuse exhaustion here. Some circuits — though, again, not this one — have contemplated that when students or parents lack any notice of their procedural rights under the IDEA, such that they are "effectively deprived . . . of an

administrative forum," they may be excused from invoking those procedures before bringing suit. *Hoeft*, 967 F.2d at 1305. But notice deficiencies do not excuse exhaustion when, as a practical matter, plaintiffs know an administrative forum is available. *See id.*; *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1097 (1st Cir. 1989). As an initial matter, neither of plaintiffs' cited authorities applied this notice exception. *See* AT Br. 23. *Honig* simply describes the IDEA's requirement that a change in placement requires notice; it says nothing about whether lack of notice excuses exhaustion. *See* 484 U.S. at 327 (contemplating futility exception). And in *Covington v. Knox Cnty. Sch. Sys.*, the Sixth Circuit contemplated the notice exception but did not apply it in that case. 205 F.3d 912, 917 (6th Cir. 2000), *abrogated on other grounds by Luna Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859 (2023) (applying futility exception based on case's "unique circumstances"). These authorities offer no reason for this court to excuse plaintiffs' failure to exhaust.

Regardless, even if this court were to adopt lack of notice as a new exhaustion exception — which it should not, because "it does not necessarily follow that administrative review is futile or inadequate" for every notice violation, *see Jamie S.*, 668 F.3d at 494 n.3 — that exception would not apply here. Plaintiffs were well aware of their procedural rights under the IDEA: they commenced administrative proceedings days before filing this lawsuit. *See* Doc. 1 at 15, 17. More importantly, both sets of parents had participated in IEP team meetings, and thus received the "procedural safeguards notice," which is provided to parents once a year and contains

information about the complaint process.  *See* 20 U.S.C. §§ 1415(d)(1)(A), 1415(d)(2)(E).  Plaintiffs do not contend that they lacked this annual notice, *see* Doc. 1-1 at 1, 26-27 (reflecting parent participating in IEP process); Doc. 1-2 at 2 (same), and they were therefore aware of their procedural rights and remedies if they were dissatisfied with the implementation of the IEPs during remote instruction.  *See Christopher W.*, 877 F.2d at 1097 (lack of notice did not excuse exhaustion when plaintiff in fact knew of administrative remedies); *Donoho ex rel. Kemp v. Smith Cnty. Bd. of Educ.*, 21 F. App'x 293, 298 (6th Cir. 2001) (plaintiff's previous attendance at IEP meetings constituted sufficient notice of rights such that exhaustion was not excused by lack of notice).  Because plaintiffs were aware of their rights, the administrative process was available to them, even if they did not receive specific notice in advance about remote learning during a global pandemic.

Plaintiffs' only argument in support of a notice exception is to cite guidance from the United States Department of Education ("USDOE") to contend that remote learning was a change in placement.  AT Br. 22-23.  As explained *infra* p. 37, the cited guidance does not support that contention.  Regardless, any lack of notice before implementing remote learning did not deprive plaintiffs of access to an administrative forum because, as explained, they knew their procedural rights.

**3.    The "stay put" provision does not exempt this case from exhaustion.**

The third purported exception that plaintiffs invoke rests on the "stay-put" provision.  AT Br. 23-24.  As explained, that provision requires that students remain in their "then-current educational placement" during any dispute between parents

and school districts. *Supra* p. 16. It is triggered by an administrative proceeding. *See id.*; 20 U.S.C. 1415(j). If a school district violates the stay-put provision by failing to maintain the student's current placement while the administrative proceeding is ongoing, courts have permitted plaintiffs to seek a preliminary injunction in federal court to enforce the stay-put provision without waiting for the administrative process to conclude. *E.g., N.D. ex rel. parents acting as guardians ad litem v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010); *see also Honig*, 484 U.S. at 326-28. In that circumstance, the administrative process has necessarily proven inadequate to enforce the stay-put provision, which "is designed precisely to prevent harm while the proceeding is ongoing." *N.D.*, 600 F.3d at 1111; *see Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002).

Plaintiffs' invocation of the stay-put provision fails to avoid the exhaustion requirement for two threshold reasons. First, the provision was not violated because the students consistently remained in their "then-current educational placement." Though plaintiffs repeatedly assert that remote learning constituted a unilateral change to their placement, as explained below, *infra* pp. 34-38, that is wrong. Second, even if remote learning changed their placement, the remote learning executive orders and district policies were rescinded before plaintiffs filed their lawsuit, leaving no need to enforce the stay-put provision to maintain a current educational placement. Indeed, while plaintiffs ostensibly sought a preliminary injunction to enforce the stay-put provision at the outset of the litigation, Docs. 3-4, at that point, remote learning had already ended, and plaintiffs abandoned that

31

motion before the motions to dismiss were fully briefed, Doc. 25 (ordering plaintiffs to address whether stay-put motion required a ruling in status report); Doc. 39 (declining to address stay-put motion in status report).  Their attempt on appeal to rely on the stay-put provision to avoid exhaustion fails for these reasons alone.

These deficiencies aside, the stay-put provision does not permit plaintiffs to "bypass the administrative process altogether." *Christopher W.*, 877 F.2d at 1097. Rather, it permits plaintiffs to obtain an injunction to "prevent harm while [an administrative] proceeding is ongoing." *N.D.*, 600 F.3d at 1111.  The authorities that plaintiffs cite thus enforced the stay-put provision while administrative proceedings were pending.  *See Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 527-31 (2d Cir. 2020); *N.D.*, 600 F.3d at 1110-11; *see also V.D.*, 403 F. Supp. 3d at 92 n.9. But plaintiffs did not seek to enforce the stay-put provision during administrative proceedings — they could not, because the students had returned to in-person learning by the time they filed administrative complaints.  Instead, they seek to use the stay-put provision to "bypass the administrative process" for their entire claim, *Christopher W.*, 877 F.2d at 1097, which would effectively eliminate the exhaustion requirement.  And allowing a plaintiff to use the stay-put provision to bypass exhaustion without first bringing their underlying dispute to the school district would make little sense.  If the district takes an action that it does not believe changes a student's placement, as it did here, the district would have no way to know that the parent disagrees — and that the action should be reversed or litigated while the dispute is pending — unless the parent alerts the district to the dispute.

In sum, plaintiffs have not established that they were excepted from exhausting administrative remedies, and the district court correctly dismissed their IDEA claim for failure to exhaust.

## B. Plaintiffs' IDEA claim also fails on the merits.

### 1. This court can reach the merits without defendants filing a cross-appeal.

Even if the court determines that exhaustion was not required, it should still affirm the dismissal of the IDEA claim for failure to state a claim. The court can do so, and modify the judgment so it is with prejudice, even though State defendants did not file a cross-appeal. Generally, an appellee may not enlarge its rights under a judgment — in this case, changing the judgment from one without prejudice to one with prejudice — absent a cross-appeal. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999). But as this court has explained, the notion that the court lacks jurisdiction to enlarge an appellee's rights when the appellee does not file cross appeal "has been criticized" by this and other circuits. *Coe v. Cnty. of Cook*, 162 F.3d 491, 497-98 (7th Cir. 1998); *see* 15A Wright & Miller, Fed. Prac. & Proc. § 3904 (3d ed.). Moreover, the court has indicated that, as long as the appellant has notice that the appellee "wants to alter and not merely defend the judgment of the district court, there is no compelling reason to enforce" the cross-appeal rule. *Coe*, 162 F.3d at 497-98.

Here, plaintiffs had the opportunity to, and did, respond to defendants' motions to dismiss in the district court, in which defendants argued that plaintiffs failed to state an IDEA claim. *See* Doc. 31 at 13-15; Doc. 41 at 18-24; *see also* Doc. 44

at 18-20.  And they are now on notice that State defendants seek to enlarge the judgment to be with prejudice, if the court determines that exhaustion was not required.  Because (1) plaintiffs responded to these merits arguments in the district court, (2) the IDEA claim has no legal merit, and (3) whether a complaint states a viable claim is a legal issue that is reviewed *de novo*, there is no reason to rigidly enforce the cross-appeal rule in this case.  If the court reaches the merits, it should therefore modify the judgment so that the dismissal of the IDEA claim is with prejudice.

### 2.     The IDEA claim fails because remote learning is not a change in placement.

All of plaintiffs' IDEA theories flow from their core assertion that virtual instruction "altered" their IEPs and "chang[ed] [their] [educational] placement." Doc. 1 at 14-16, 23-26.  But plaintiffs do not describe how B.W. or T.S. were deprived of any specific services while learning remotely.  *See id.*  Nor did they allege that their IEPs required that all services be provided in person, given that their IEPs contain no such requirement.  *See* Docs. 1-1, 1-2.  Instead, they contend that remote learning is a *per se* change in placement — regardless of the students' particular circumstances.  That contention is wrong, and plaintiffs therefore cannot state a valid claim under the IDEA.

"Educational placement" is not defined by the IDEA, but this court has noted that it "means something more than the actual school attended by the child and something less than the child's ultimate educational goals."  *Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 549 (7th Cir. 1996).

Defining a student's educational placement is a "fact-driven" inquiry that depends on, among other things, "the context in which the case arose." *See id.* at 548-49. For example, when a case involves a student's expulsion, the educational placement is defined "narrowly" and "a change of school is interpreted as a change in placement." *Id.* On the other hand, "[w]here fiscal concerns cause a student to be transferred," courts take a "looser" approach, focusing "not on the school, but on the child's general educational program." *Id.* at 549. This approach also requires "flexibility" to account for each student's unique circumstances. *John M. v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202*, 502 F.3d 708, 715 (7th Cir. 2007). "A more rigid interpretation of 'educational placement,' . . . would impede the school board's ability to make 'even minor discretionary changes within the educational programs provided for its students.'" *Id.* at 714 (quoting *Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (PS 79) v. N.Y.C. Bd. of Educ.*, 629 F.2d 751, 755 (2d Cir. 1980)).

Applying these principles, courts have held that actions that do not single out disabled students do not change students' placements. For example, the Second Circuit held that closure of an entire school "for budgetary reasons," and transfer of students to a different school, was not a change in placement because it did not change the students' "general educational program," noting that they "remain[ed] in the same classification, the same school district, and the same type of educational program special classes in regular schools." *Concerned Parents*, 629 F.2d at 756. More recently, the Ninth Circuit held that a decision to close, or furlough, schools for

multiple days to alleviate a fiscal crisis also did not change students' placement because they "continue[d] to attend the same school, ha[d] the same teachers, and stay[ed] in the same classes." *N.D.*, 600 F.3d at 1108, 1116.  The fact that the furloughs applied to all students — disabled and non-disabled alike — illustrated that there was no change in placement because "Congress did not intend for the IDEA to apply to system wide administrative decisions." *Id.* at 1116-17.  Characterizing such an administrative decision as a change in placement, the court reasoned, would functionally "give the parents of disabled children veto power over a state's decisions regarding the management of its schools." *Id.* at 1117.

Implementing remote learning across the board because of a global pandemic similarly did not change the students' placement.  Plaintiffs do not allege that virtual instruction changed their "general educational program." *Dist. No. 218*, 103 F.3d at 549.  And although they began receiving instruction remotely, they remained in "the same school, [with] the same teachers, and stay[ed] in the same classes." *N.D.*, 600 F.3d at 1116.  This "system wide administrative decision[ ]" affected all students equally and did not "single[ ] out" disabled students. *Id.*  And for these same reasons, other courts considering this same issue in similar IDEA challenges to Covid-era remote learning policies have uniformly agreed that remote learning does not constitute a change in placement. *See Roe v. Baker*, 624 F. Supp. 3d 52, 58-59 (D. Mass. 2022); *Bills v. Va. Dep't of Educ.*, 605 F. Supp. 3d 744, 754-55 (W.D. Va. 2022); *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 186-90 (S.D.N.Y. 2020), *aff'd in part, appeal*

*dismissed in part sub nom. K.M. v. Adams*, No. 20-4128, 2022 WL 4352040 (2d Cir. Aug. 31, 2022).

Plaintiffs' three arguments that remote learning was a change in placement — made here and in the district court — are unpersuasive. They first point to guidance from USDOE, attached to their complaint, Docs. 1-3, 1-4, which they contend "established" that virtual learning was permitted only when "a disabled student's parent consented to such instruction," AT Br. 22-23; *see* Doc. 41 at 18-19. This misstates that guidance, which says nothing about requiring parental consent before providing services remotely during the pandemic. Docs. 1-3, 1-4. While one fact sheet "encourages" parents and school districts to "collaborate creatively" to meet the disabled students' needs, it also reiterates that districts must provide services to ensure that students receive a free appropriate public education, which "may include, as appropriate, special education and related services provided through distance instruction provided virtually, online, or telephonically." *Id.* The guidance reiterates that districts have "flexibility" and that federal law "does not mandate specific methodologies." *Id.* Some courts have relied on this very same guidance to conclude that virtual instruction is not a change in placement. *J.T.*, 500 F. Supp. 3d at 187-88; *see also Roe*, 624 F. Supp. 3d at 59.

Second, plaintiffs argued that implementing "home instruction" for a disabled student always changes the student's placement. Doc. 41 at 20 (citing *N.D.*, 600 F.3d at 1116). But "home instruction" is a type of educational environment for students who are unable to attend school due to a medical condition, 105 ILCS 5/14-13.01, that

differs from "instruction in regular classes, special classes, [and] special schools," 34 C.F.R. § 300.115(b). *See* Doc. 49 at 8. Implementing remote learning for all classes is not equivalent to mandating that disabled students receive "home instruction."

Finally, plaintiffs also argued that remote learning was a change in placement because it "affects disabled and non-disabled students differently," Doc. 41 at 20, apparently relying on various news articles to claim that disabled students generally experienced greater regressions in learning than non-disabled students while learning remotely, *id.* at 9; Doc. 44 at 9-10. Even if disabled students did not learn as effectively while remote as they might have in-person — an unfortunate by-product of a global pandemic — a student does not experience a change in placement simply by not meeting "ultimate educational goals." *Dist. No. 218*, 103 F.3d at 549. Rather, the IDEA is structured to prevent disabled students from being "singled out." *N.D.*, 600 F.3d at 1116. The State did not single out disabled students for remote learning.

Thus, this court can affirm the dismissal of the IDEA claim on the merits, even if plaintiffs could establish some excuse for their failure to exhaust.

## III.    The district court correctly dismissed the claims under the Rehabilitation Act and the ADA.

### A.    The district court correctly held that plaintiffs had to exhaust IDEA administrative remedies to bring these claims.

When a plaintiff seeks to bring a claim under the ADA, Rehabilitation Act, or any other federal law, while "seeking relief that is also available under [the IDEA]," that plaintiff must exhaust administrative remedies "to the same extent as would be required had the action been brought under [the IDEA]." 20 U.S.C. § 1415(l). To decide if a claim seeks relief available under the IDEA, courts examine both the

38

nature of the claim, *see Fry*, 580 U.S. at 168-73, and the remedy sought, *see Luna Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859, 863-64 (2023).  Specifically, the IDEA's exhaustion requirement applies when "the gravamen" of the claim "seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Fry*, 580 U.S. at 170.  Moreover, the claim must seek a remedy that is available under the IDEA for the exhaustion requirement to apply.  *Luna Perez*, 143 S. Ct. at 863-64.  For example, a plaintiff who seeks compensatory damages under the ADA need not exhaust that claim using the IDEA procedures because compensatory damages are not available under the IDEA.  *Id.*

Plaintiffs have never disputed that their ADA and Rehabilitation Act claims are based on defendants' purported denial of a FAPE.  *See* Doc. 41 at 7-11; Doc. 44 at 5-14.  Indeed, they conceded as much before the district court, Doc. 41 at 12, and they do not challenge the court's finding that these claims sought a free appropriate public education, Doc. 50 at 11.  In any event, plaintiffs contend that defendants violated the ADA and Rehabilitation Act by "limiting their access to education, programs, and services," Doc. 1 at 28, 30—that is, by denying them a FAPE.

The requirement that the remedy sought be available under the IDEA was recently articulated by the Supreme Court in *Luna Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859, 862 (2023), which was decided after plaintiffs filed their opening brief.  While this issue was not addressed earlier, the only remedies that plaintiffs sought are remedies that are available under the IDEA.  Namely, plaintiffs sought four types of remedies:  (1) a declaration that remote learning violates federal law, (2) an

injunction to prohibit future remote learning, (3) appointment of a "RICO Special Monitor" to oversee the disbursement of IDEA funds, and (4) "compensatory education." Doc. 1 at 47-50. Injunctive and declaratory relief is available under the IDEA. *See Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985). And the court need not consider whether a "RICO Special Monitor" can be appointed under the IDEA for purposes of the ADA and Rehabilitation Act claims because plaintiffs sought that relief as part of their RICO claim only. *See* Doc. 39 at 3. Also, "compensatory education" is an equitable remedy, which reimburses parents and students for educational costs during a time when a district did not provide a free appropriate public education, that is available under the IDEA. *Brown*, 442 F.3d at 597. Thus, because plaintiffs' ADA and Rehabilitation Act claims seek the same relief as their IDEA claims, they too must be exhausted through the IDEA procedures.

Plaintiffs' only arguments that they need not exhaust these two claims are the same as for their IDEA claim. *See* AT Br. 18-24. And while they refer to a request for "damages" in their opening brief, *see id.* at 2, 7, 18, 32, and the complaint mentioned nominal and punitive damages, Doc. 1 at 49-50, plaintiffs repeatedly affirmed in the district court that they "d[id] not seek monetary damages for the claims against the Defendants," Doc. 43 at 22; *see id.* at 26 (plaintiffs "do not seek

money damages"); Doc. 39 at 3 (similar).[7]  Plaintiffs accordingly waived any claims

for money damages, *see Hamer v. Neighborhood Hous. Servs. of Chi.*, 897 F.3d 835,

840 (7th Cir. 2018), and they may not amend their complaint on appeal to add a

request for them now, *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348

(7th Cir. 2012).

> ### B.     Even if plaintiffs were not required to exhaust their ADA and Rehabilitation Act claims, the court should affirm the dismissal of those claims on the merits.

To state a claim under both the ADA and the Rehabilitation Act, a plaintiff

must allege that they (1) are a qualified individual with a disability, and (2) were

denied government benefits because of that disability.  *P.F. by A.F. v. Taylor*, 914

F.3d 467, 471 (7th Cir. 2019).  Disability discrimination under both statutes can be

established in one of three ways:  "(1) the defendant intentionally acted on the basis

of the disability, (2) the defendant refused to provide a reasonable modification, or (3)

the defendant's rule disproportionally impacts disabled people."  *A.H. by Holzmueller*

*v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (cleaned up).  But under any

theory, the plaintiff must show "causation"—namely, that "but for" the disability,

the plaintiff would have accessed the denied benefits or services.  *Id.*  Even though

the district court did not reach the merits of this claim, this court can do so — and

affirm the dismissal with prejudice — for the same reasons as for the IDEA claim.

---

[7]  The complaint, moreover, mentioned only nominal and punitive damages, which
this court has not held are available under the ADA or Rehabilitation Act.  *See*
*Hacker v. Dart*, 62 F.4th 1073, 1087 (7th Cir. 2023).

*Supra* pp. 33-34; *see* Doc. 30 at 27-28 (arguing that these claims fail on the merits); Doc. 47 at 8 (same).

Here, plaintiffs did not allege that they were denied benefits or services because of their disabilities. Though they generally claimed that their IEPs "necessitate in-person services," they did not identify any specific services that they failed to receive. Indeed, they admit that B.W., whose IEP required occupational therapy, returned to some in-person instruction as early as April 2020. Doc. 1 at 14. As for T.S., plaintiffs did not allege that his IEP required that he receive any services in person or identify any services that were not provided. *Id.* at 15-16. Plaintiffs' conclusory allegations that they were "den[ied] equal access" and were "limit[ed] [in] their access to education, programs, and services as compared to their non-disabled peers," *id.* at 28, 30, are not sufficient to state a claim, *see Iqbal*, 556 U.S. at 678. And plaintiffs did not allege that State defendants implemented remote learning because of plaintiffs' disabilities. Nor could they, because the remote learning executive orders applied to all students in the State. *A.H.*, 881 F.3d at 594.

Plaintiffs did not address these flaws in the district court, instead arguing that the law forbids treating disabled students "the same" as non-disabled students because disabled students are entitled to specific services. Doc. 44 at 21. This confuses the requirements of the IDEA, which requires that States and districts provide services to disabled students in exchange for funds, with the ADA and Rehabilitation Act, which prohibit discrimination.

Plaintiffs also contended that remote learning disparately impacted disabled students, but they cannot establish causation under this theory either.  Doc. 41 at 8-10, 22-23.  To raise a disparate impact theory, plaintiffs must allege "'factual content'" that remote learning "'caused a relevant and statistically significant disparity between' disabled and non-disabled [students]," *Roberts v. City of Chi.*, 817 F.3d 561, 566 (7th Cir. 2016) (quoting *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014)), that is not "'justified,'" *id.* (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)).  As an initial matter, the complaint raised a disparate impact theory in a bare conclusory fashion, which cannot forestall a motion to dismiss.  Doc. 1 at 26-33.  Though they later cited news articles about the effects of remote learning on disabled students, Doc. 41 at 8-10, 22-23, they cannot expand their allegations through briefing.  *See Agnew*, 683 F.3d at 348.  In any event, even if the court were to consider plaintiffs' news articles, their disparate impact theory fails because those articles are not "factual content" alleging that remote learning "caused a relevant and statistically significant disparity between disabled and non-disabled [students]." *Roberts*, 817 F.3d at 566 (cleaned up).  Nor could plaintiffs establish that the State's remote learning executive orders were not "justified," *id.* (cleaned up), because requiring students to learn remotely at the outset of a novel pandemic is justified to protect public health.  *Infra* p. 45.

## IV.    The district court correctly dismissed the section 1983 claims.

Plaintiffs' section 1983 claims also fail because they did not exhaust administrative remedies.  Because the section 1983 claims, like the ADA and

Rehabilitation Act claims, sought relief that was available under the IDEA for the supposed denial of an education, Doc. 1 at 31-33, plaintiffs were similarly required to exhaust IDEA administrative remedies before bringing those claims, 20 U.S.C. § 1415(l).  The district court thus correctly dismissed these claims for lack of exhaustion.

Even if that were not the case, those claims would fail for two other reasons. First, any request for relief that is not moot is barred (1) because state agencies and officials sued in their official capacities are not "persons" under section 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and (2) by the Eleventh Amendment, *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).  Although State defendants did not raise these defenses in the district court, a State waives its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction."  *Edelman*, 415 U.S. at 673 (cleaned up).  Because State defendants did not do so here, the court can affirm on this basis.

Second, these claims also fail on the merits, which the court can reach and dismiss the claims with prejudice, because defendants raised these arguments in the district court.  *Supra* pp. 33-34; *see* Doc. 29 at 7-9; Doc. 30 at 29-31; Doc. 31 at 15-22. Because education is not a fundamental right for purposes of substantive due process, and because disability is not a suspect class under the Equal Protection Clause, the remote learning executive orders are reviewed for a rational basis.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985); *San Antonio Indep. Sch. Dist. v.*

*Rodriguez*, 411 U.S. 1, 37, 44 (1973).  A government action satisfies rational basis review if it has a rational relationship to a legitimate government purpose.  *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1010 (7th Cir. 2019).  The government action enjoys a "strong presumption of validity," and the State need not have expressly articulated its reasoning for the action.  *Id.*; *Srail v. Vill. of Lisle*, 588 F.3d 940, 946-47 (7th Cir. 2009).

State defendants' implementation of remote learning satisfies this standard. Faced with a novel pandemic, whose features and means of spreading were not yet understood, and for which there was no vaccine or cure, the decision to suspend in-person schooling was certainly rational.  *See* Doc. 29 at 9; Doc. 30 at 30 (collecting cases); Doc. 31 at 17-22; *Klaassen v. Trustees of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021).  To hold otherwise would mean that the State was required to expose schoolchildren — including plaintiffs and other disabled students — to a deadly disease.

Plaintiffs offered two responses:  (1) that remote learning deprived students of their "property right" to a free appropriate public education, and (2) that the equal protection claim was based on a "disparate impact" theory, maintaining that remote learning is "often unsuitable to meet the needs of disabled students."  Doc. 41 at 22-24; Doc. 43 at 19-22; Doc. 44 at 24.  The first argument conflates substantive due process with procedural due process, *see Lukaszczyk*, 47 F.4th at 599, 604, and, regardless, merely restates their IDEA claim that remote learning deprived them of a free appropriate public education.  As explained, it did not.  *Supra* pp. 34-38.  And the

Fourteenth Amendment, unlike the IDEA, does not require that governments give disabled individuals special accommodations. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367-68 (2001). Plaintiffs' second argument conflates their ADA and Rehabilitation Act claims, which can present a disparate impact theory, with equal protection, which cannot. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *Adams*, 742 F.3d at 726. Thus, this court could, alternatively, affirm the dismissal of the section 1983 claims on the merits.

## V.    The district court correctly dismissed the RICO claim against State defendants.

### A.    The Eleventh Amendment bars any requests for relief against State defendants that are not moot.

The Eleventh Amendment renders States, state agencies, and state officials sued in their official capacities immune from being sued in federal court. *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). There are exceptions to this immunity that arise when: (1) the State consents to being sued in federal court, (2) Congress abrogates a State's immunity, or (3) the action seeks prospective injunctive relief against state officials sued in their official capacities under the doctrine articulated in *Ex parte Young*, 209 U.S. 123 (1908). *See Council 31 of AFSCME v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012). These exceptions do not save plaintiffs' RICO claim. The State has not consented to RICO suits, and the RICO statute does not abrogate a State's immunity. *See Banks v. ACS Educ.*, 638 F. App'x 587, 589 (9th Cir. 2016). And although plaintiffs sought declaratory and injunctive relief against the Governor and Superintendent in their official capacities, those claims are moot. *Supra* pp. 13-19. While plaintiffs characterize their request

for a "RICO Special Monitor" as "prospective injunctive relief," Doc. 1 at 49; Doc. 39 at 3, this does not satisfy *Ex parte Young* because that relief would "require[ ] the payment of funds from the state treasury," *Edelman*, 415 U.S. at 677.

For their part, plaintiffs argue that the State consented to being sued under RICO because "the RICO claims are directly related to the denial of a FAPE." AT Br. 18. Plaintiffs are wrong. Though the State waived its immunity for suits under the IDEA when it accepted IDEA funds, *see* 20 U.S.C. § 1403, the RICO claim is brought under a separate statute, not under the IDEA. Plaintiffs cannot shoehorn an IDEA theory into a RICO claim to simultaneously avoid the IDEA's exhaustion requirement and sovereign immunity.

**B.      Plaintiffs did not state a RICO claim against State defendants.**

To the extent that the Eleventh Amendment is jurisdictional, the court should affirm the dismissal of the RICO claim against State defendants on that ground. To the extent the Eleventh Amendment is not jurisdictional, it can affirm the dismissal because plaintiffs did not state a RICO claim, as the district court held. Doc. 50 at 13 n.4.

To state a civil RICO claim a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *DeGuellege v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). A pattern of racketeering activity can be established by at least two predicate acts of racketeering activity, which includes mail and wire fraud. 18 U.S.C. §§ 1961(1), (5). Only those "injured in . . . business or property" may bring such a claim, 18 U.S.C. § 1964(c), and the plaintiff must also allege the

defendants' actions proximately caused this injury, *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010).

Plaintiffs allege that the Superintendent, along with individual Chicago and Ottawa defendants, committed mail and wire fraud to improperly obtain federal IDEA funds by falsely assuring the federal government that those funds were being used for the benefit of disabled students.  Doc. 1 at 34-47.  This RICO claim fails in multiple respects, because plaintiffs did not sufficiently allege RICO injury, predicate acts of fraud, or causation.

### 1.    Plaintiffs were not injured in business or property.

RICO's injury requirement "'preclude[s] recovery for personal injuries and the pecuniary losses incurred there-from.'"  *Ryder v. Hyles*, 27 F.4th 1253, 1257 (7th Cir. 2022) (quoting *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992)).  Even though many personal injuries "'entail some pecuniary consequences,' . . . that does not transform them all into 'business or property' injuries."  *Id.* (quoting *Doe*, 958 F.2d at 770). Here, plaintiffs asserted two injuries, neither of which satisfies the RICO injury requirement.  First, they rely on "misappropriated or misspent" IDEA funds.  Doc. 1 at 39.  But any misappropriation of funds through false assurances would have injured the federal government, not plaintiffs.  *See J.T.*, 500 F. Supp. 3d at 166; *cf. Courtney v. Halleran*, 485 F.3d 942, 950 (7th Cir. 2007) (depositors could not bring RICO claim that properly belonged to FDIC); *Illinois ex rel. Ryan v. Brown*, 227 F.3d 1042, 1045 (7th Cir. 2000) (State would have been injured by misdirection of funds, but taxpayers could not bring RICO claim).

48

Plaintiffs respond that, as disabled students, they had an interest in the allegedly misappropriated funds, which would have been used for their benefit. AT Br. 27-28. The fact that some government funds may have been spent for disabled students' benefit does not make those funds the students' "property." None of the cases that plaintiffs cite state that disabled students have a personal property right to IDEA funds allocated by the federal government, much less one that satisfies the RICO injury requirement. *Id.* at 30-31 (citing *McClain v. Smith*, 793 F. Supp. 761, 764 (E.D. Tenn. 1990); *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007); *Clark v. Banks*, 193 F. App'x 510, 517 (6th Cir. 2006); *N.J. Prot. & Advoc.*, 563 F. Supp. 2d at 490). Indeed, plaintiffs appear to contend that any violation of the IDEA would necessarily be a "mishandling of IDEA funds" that would constitute an injury under RICO. AT Br. 31. But they cite no authority in support of this expansion of the RICO injury requirement.

Plaintiffs' second claimed injury is "depriv[ation] of their rights under the IDEA," Doc. 1 at 47, but the alleged denial of a free appropriate public education is a "personal injury," not an injury to business or property, *see Ryder*, 27 F.4th at 1257. Plaintiffs cite some authorities describing a free appropriate public education as a "property right," AT Br. 30, but none of these cases concerned RICO, and none suggested that deprivation of an education constitutes an "economic loss" needed for a RICO injury. *Doe*, 958 F.2d at 769; *see Ryder*, 27 F.4th at 1257 (deprivation of activities that plaintiffs "had a legitimate expectation to receive" was not RICO injury). Plaintiffs also cite various authorities discussing the general statutory rights

created by the IDEA, AT Br. 28-29, but the deprivation of any statutorily-created right is not an economic injury to "business or property" for purposes of RICO. To hold otherwise would nullify the "business or property" limitation.

### 2. Plaintiffs did not adequately allege that State defendants committed any predicate acts of fraud.

Because the predicate acts of racketeering activity plaintiffs alleged were acts of mail and wire fraud, plaintiffs were required to plead those acts with particularity. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 (7th Cir. 1998) (citing Fed. R. Civ. P. 9(b)). Namely, they had to allege a misrepresentation, as well as the person who made the misrepresentation; the misrepresentation's time, place, and content; and the method used to communicate the misrepresentation. *Id.*

Although plaintiffs devoted pages of their complaint to the purported predicate acts of the Chicago and Ottawa defendants, Doc. 1 at 40-46; *see* AT Br. 26-27, the complaint contains almost no allegations of fraud by the Superintendent. Plaintiffs merely allege that, at some unspecified point, the Superintendent gave "false assurances" to USDOE that the State was complying with the IDEA. Doc. 1 at 34; *see id.* 36-37, 39. While plaintiffs cited letters from USDOE approving disbursement of IDEA funds, *id.* at 37, the letters contain no details about any false statements, Docs. 1-10, 1-11, 1-12. And plaintiffs merely allege on "information and belief" that these unspecified statements were submitted "via email, or wire," or "via mail." Doc. 1 at 37. These allegations lacked the particularly that Fed. R. Civ. P. 9(b) requires.

### 3.     Plaintiffs did not sufficiently allege that the purported misrepresentations caused them harm.

Plaintiffs also could not satisfy RICO's causation requirement, which contains but-for and proximate cause components, *see Hemi Grp.*, 559 U.S. at 9, for two reasons. First, the alleged fraud was perpetrated on the federal government, not the plaintiffs, and even if plaintiffs were arguably injured by the deprivation of funds, that injury was too attenuated from the fraud to state a RICO claim. *Id.* (plaintiff did not satisfy RICO proximate cause requirement when fraud did not "le[a]d directly to [plaintiffs'] injuries"). Second, the alleged fraud could not have caused plaintiffs to be denied a free appropriate public education because, by plaintiffs' account, defendants first denied them an education, then falsely told the federal government that they were providing one. *See* Doc. 1 at 34-37. The alleged misrepresentations thus occurred after the supposed injury, and could not have caused the injury. To the extent they assert that defendants fraudulently sought IDEA funds *before* implementing remote learning, with the intent of depriving students of an education in the future, that is too implausible to state a claim. "No one knew that there was going to be a pandemic; it took the entire world by surprise." *J.T.*, 500 F. Supp. 3d at 170 (rejecting similar RICO allegations as "utter[ly] implausib[le]").

Although the district court identified causation as one of the many flaws in its RICO claim, Doc. 50 at 13, plaintiffs' only response is to note that "[t]he IDEA is a hybrid of a grant statute and a statute creating substantive rights." AT Br. 27. This does not transform their complaint into one that alleges causation. The district court correctly dismissed the RICO claim.

**VI.    The state law claim against State defendants was barred by the Eleventh Amendment.**

The district court observed that the Eleventh Amendment barred "the state-law injunctive-relief claims" against State defendants, Doc. 50 at 8, but the state law claim against State defendants was barred in its entirety, for every form of relief sought.  The Eleventh Amendment extends to all claims brought in federal court under state law, barring such claims against state agencies and officials in their official capacity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984).

Plaintiffs argue that there is an exception to Eleventh Amendment immunity, invoking an Illinois state law doctrine, when "the plaintiff alleges that state officials or employees violated statutory or constitutional law."  AT Br. 17-18 (citing *Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016), *aff'd*, 138 S. Ct. 784 (2018), and *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)) (cleaned up).  But the very authority on which plaintiffs rely reveals that plaintiffs are conflating Eleventh Amendment immunity with a separate state law sovereign immunity, based on an Illinois statute.  *Murphy*, 844 F.3d at 656.  "While both doctrines are often referred to as 'sovereign immunity,' they are not the same."  *Id.*  Plaintiffs' invoked "exception" applies to state law sovereign immunity, which derives from the Illinois statute, not the Eleventh Amendment.  *See id.* at 658-59.

Notwithstanding the district court's use of the generic term "sovereign immunity," the district court's citation to *Ex parte Young* and other Eleventh Amendment cases shows that the district court's consideration of that claim was

based on the Eleventh Amendment, not Illinois's sovereign immunity statute.  Doc. 50 at 8-9.  Plaintiffs do not address the Eleventh Amendment in their brief, except to state that sovereign immunity does not apply when claims "relate to the denial of a FAPE."  AT Br. 18.  But Congress has abrogated Eleventh Amendment immunity for IDEA claims, 20 U.S.C. § 1403, which does not open the State to lawsuits under other statutes or state law, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55 (1996).

Finally, and in any event, even if the Eleventh Amendment did not bar this claim, the district court correctly relinquished supplemental jurisdiction after dismissing the federal claims.  *See* 28 U.S.C. § 1367.

## CONCLUSION

For these reasons, State Defendant-Appellees request that this court affirm the judgment of the district court, and, if it reaches the merits on counts 1 through 5, to modify the judgment to be with prejudice as to those claims.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

/s/ Leigh J. Jahnig
**LEIGH J. JAHNIG**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 793-1473 (office)
(773) 590-7877 (cell)
Leigh.Jahnig@ilag.gov

Attorneys for State Defendants-
Appellees Governor Pritzker, the
Illinois State Board of Education, and
its Superintendent

June 29, 2023

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016, in 12-point Century Schoolbook BT font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32 in that the brief contains 13,945 words.

/s/ Leigh J. Jahnig
**LEIGH J. JAHNIG**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 793-1473 (office)
(773) 590-7877 (cell)
Leigh.Jahnig@ilag.gov

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 29, 2023, I electronically filed the foregoing **Brief of State Defendant-Appellee** with the Clerk of United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants in this appeal, named below, are CM/ECF users, and thus will be served via the CM/ECF system.

Thomas Arthur Doyle
tadoyle2@cps.edu

Rory J. Bellantoni
rory@pabilaw.org

Eric Bernard
ebernard@petrarcagleason.com

William F. Gleason
wgleason@sragahauser.com

/s/ Leigh J. Jahnig
**LEIGH J. JAHNIG**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 793-1473 (office)
(773) 590-7877 (cell)
Leigh.Jahnig@ilag.gov